**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-31385**
_____


**KELLY INVESTMENT, INC.,**

**Plaintiff-Appellant,**

**versus**

**CONTINENTAL COMMON CORP., ET AL.,**

**Defendants-Appellees.**

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
December 18, 2002

Before JONES, SMITH and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

Kelly Investment, Inc. ("Kelly")appeals the district court's decision to abstain from exercising its jurisdiction and to stay the consolidated actions of a Texas state court. The district court erred in finding abstention appropriate under the factors

_____

[*]Circuit Judge of the Sixth Circuit, sitting by designation.

enunciated in *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976), so we reverse.

## I. BACKGROUND

This case involves concurrent proceedings in the Eastern District of Louisiana and Texas state court. In April 1999, Continental Common Corp., Continental Poydras Corp., and Continental Baronne Corp. ("the Continental Defendants"), along with other related entities, filed suit in Texas state court against Dynex Commercial, Inc. ("Dynex"),[1] alleging that Dynex breached promissory notes on which the Continental Defendants were obligees. These promissory notes were secured by mortgages on the Continental Defendants' office buildings in New Orleans. In addition, unrelated claims were brought against Dynex by parties who are not involved in the federal proceeding.

On July 6, 2000, Kelly purchased the interest in the promissory notes from Dynex. In doing so, Kelly agreed to participate in the Texas litigation. In November 2000, the Continental Defendants added Kelly as a separate defendant in the Texas suit, alleging that Kelly individually breached the promissory notes by unjustly withholding tenant improvement funds.[2] The Continental Defendants also announced their intent to

---

[1] Dynex is not a party to the federal proceeding.

[2] At this point in the state proceedings, the Continental Defendants did not seek to renege or otherwise extend the maturity date of the promissory notes.

2

unilaterally extend the maturity date of the promissory notes, which was originally dated April 1, 2001. Kelly filed a special appearance in the Texas action, challenging the court's right to invoke *in personam* jurisdiction over it. Nearly a year later, in October 2001, the Texas state court overruled Kelly's special appearance.

On February 6, 2001, with its special appearance pending in state court, Kelly filed three petitions for declaratory judgment against the Continental Defendants in Louisiana state court. Kelly sought declarations that (1) the term "stabilization,"[3] as defined in the three promissory notes used to finance the three Continental properties was a condition precedent to the extension of the due date of the Promissory Notes; (2) because stabilization had not occurred, the Continental Defendants did not have a right to extend the maturity date of the notes; and (3) Kelly did not have any obligation under the promissory notes to make advances for tenant improvements. The Continental Defendants successfully removed to federal court, where the cases were consolidated. Kelly filed a

---

[3] The promissory notes used to finance the three Continental Defendants' properties defined "stabilization":

"Stabilization" is defined to mean stabilized occupancy of the Property for a period of three (3) consecutive months and based on net operating income (calculated on an annualized basis and based on actual rents, executed leases and verified expenses, and a debt service ratio of 1.25:1.00) sufficient to support a loan principal amount of at least $12,000,000.00 bearing interest at the Extension Interest Rate amortized over a 25 year period.

motion to remand, while the Continental Defendants filed a Rule 12(b)(6) motion to dismiss.  The district court denied both motions on June 6, 2001.  On June 14, 2001, the Continental Defendants filed an amended petition in the Texas proceeding to include a declaratory judgment claim against Kelly.  This claim, unlike the previous state claims brought by the Continental Defendants, raised the same issues brought by Kelly in the federal proceeding -- namely, whether stabilization of the New Orleans properties was a prerequisite to extension of the Continental Loans' maturity date. Eight days later, on June 22, 2001, the Continental Defendants filed a motion to abstain in federal district court.  On August 2, 2001, with the motion to abstain pending, Kelly added a claim for money damages against the Continental Defendants.  In addition, Kelly sought a writ of *fieri facias* directing the United States Marshal to seize and sell the New Orleans office buildings to satisfy its damage claim.

The district court stayed the federal proceeding on November 23, 2001.  It declined to apply the standard set forth in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), which gives district courts discretion to dismiss a declaratory judgment action when a parallel suit not governed by federal law and presenting the same issues is pending in state court. Specifically, the district court rejected the Continental Defendants' contention that the *Brillhart* standard should control

in light of the fact that Kelly's coercive claims were added only after the Continental Defendants' motion to abstain was filed.[4] Instead, the district court applied the abstention analysis of *Colorado River*, finding that the inconvenience of the federal forum, the threat of piecemeal litigation, and the order in which jurisdiction was obtained supported staying the proceedings.

## II. STANDARD OF REVIEW

A district court's decision to stay a proceeding is generally reviewed for abuse of discretion. *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 (5th Cir. 1999). However, to the extent that such a decision rests on an interpretation of law, the review is *de novo. Id.*

## III. DISCUSSION

Both the district court and the Texas state court have concurrent jurisdiction over this dispute. A court may abstain from a case that is part of parallel, duplicative litigation typically only under "exceptional" circumstances. *Colorado River*,

---

[4] The district court's ruling on this point is correct. *Brillhart* is only applicable "when a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action." *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994). In contrast, when an action contains any claim for coercive relief, the *Colorado River* abstention doctrine is ordinarily applicable. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000). Kelly's claims for coercive relief are not frivolous, and there is no evidence that Kelly added them solely as a means of defeating *Brillhart*. Therefore, *Colorado River* provides the appropriate abstention standard.

5

424 U.S. at 818. Here, the lawsuits are parallel since Kelly and the Continental Defendants are contesting stabilization and its effect on the maturity date of the promissory notes in concurrent state and federal proceedings.

In making the determination of whether "exceptional circumstances" exist that allow abstention in deference to pending state court proceedings, the Supreme Court has identified six relevant factors:

> (1) assumption by either court of jurisdiction over a res,(2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 540 n.6 (5th Cir. 2002) (internal quotation marks and citation omitted). The decision of whether to abstain "does not rest on a mechanical checklist" of these factors, but rather "on a careful balancing of [them] as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

In its decision staying the proceedings, the district court found that Louisiana was an inconvenient forum, that piecemeal litigation would result if concurrent proceedings were permitted, and that the Texas proceeding had progressed further. An analysis of the individual factors reveals that the district court's

6

determination was flawed in several respects. For example, the second factor, relative inconvenience of the forums, should be analyzed as to "whether the inconvenience of the federal forum is so great" that abstention is warranted. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988). The district court, however, merely found that Texas is a "more convenient" forum in light of the fact that the Texas proceeding commenced in April 1999, while the federal proceeding was not filed until 2001. The court concluded that many of the witnesses and exhibits are already located in Texas. Although the court determined that witnesses located in Virginia and California would be equally inconvenienced if forced to travel to Texas or Louisiana, it found that the prospect of witness travel to both locations weighed in favor of abstention. The court should not have considered the inconvenience of requiring these witnesses to travel to two separate proceedings as cutting in favor of abstention. *See New Orleans Public Serv., Inc. v. Council of New Orleans*, 911 F.2d 993, 1005 n.8 (5th Cir. 1990). This possibility is present whenever there are concurrent federal and state proceedings. Overall, the inconvenience of Louisiana is not "so great," *Evanston*, 844 F.3d at 1192, for both the evidence and witnesses that abstention is warranted.[5]

---

[5] The court correctly noted that at least some of the documents relating to the loan agreements, originally owned by Dynex, have already been produced in the Texas litigation.

With regard to the avoidance of piecemeal litigation, both parties agree that the court relied principally on this factor in deciding to abstain. The court recognized that

> [t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination. <u>Black Sea</u>, supra. However, in the instant case, there is not just the risk of duplicative litigation. If the case proceeds in both Courts, there is a risk that the two Courts involved might reach inconsistent rulings on the same issues. This weighs heavily in favor of abstention.

The court's conclusion fails to realize that *any* time duplicative litigation exists, the possibility of inconsistent judgments also exists. In both *Evanston* and *Murphy*, the court recognized that the problem of inconsistent judgments can be obviated through a plea of *res judicata* should one court render judgment before the other. *Evanston*, 844 F.2d at 1192; *Murphy*, 168 F.3d at 738. Therefore, the district court incorrectly relied upon the possibility of inconsistent judgments as its main reason for abstaining. Neither court has accepted jurisdiction over a *res; w*ith the same parties before both the federal and state court, and the same issues of stabilization and foreclosure pending, the litigation is merely duplicative. Unlike *Colorado River*, there is no risk that

However, there is no evidence that documents relating to the tenant improvement funds, which are located in Louisiana, have been produced in the Texas proceeding. At best, the location of the evidence, which consists solely of an unspecified number of documents, tilts in the Continental Defendants' favor.

irreconcilable rulings may result. Should one court render judgment before the other, *res judicata* will ensure proper order.

Finally, with regard to the fourth factor, the court's conclusion that the Texas suit has progressed further is flawed. Although the state proceeding was initiated in April 1999, Kelly was not added as a party until November 2000. More importantly, the issues of stabilization and contract reformation, which were *first* raised in the federal declaratory action, did not arise in the Texas action until June 14, 2001, when the Continental Defendants filed an amended petition. No discovery has taken place in state court regarding these issues. In fact, the extent of discovery in state court appears to consist of Kelly's amenability to personal jurisdiction. As the court recognized, discovery in federal court has been stalled by several protective orders granted in favor of the Continental Defendants. Currently, trial in state court is immediate. As Kelly notes, with several additional parties and issues present in the state litigation, there is a strong chance that the federal court will be the first to render a decision, which bolsters the conclusion that the court erred in its determination that the state proceeding had progressed further.

In sum, none of the *Colorado River* factors supports the court's decision to abstain.[6] Because the facts of this case do

---

[6] The district court properly noted that the absence of the first factor, assumption by either court over a res, weighs against abstention. *Black Sea*, 204 F.3d at 650. The court also correctly

not justify the application of an "extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, the decision of the district court is **REVERSED and REMANDED**.

---

determined the fifth and sixth factors, whether federal law provides the basis of decision and the adequacy of the state proceedings, to be neutral.