ITT INDUSTRIES, INC., Plaintiff,

v.

PACIFIC EMPLOYERS INSURANCE
COMPANY, Defendant.

Civ.A. No. 05–5223.

United States District Court,
E.D. Pennsylvania.

April 13, 2006.

Carol Choate Carty, Morgan, Lewis & Bockius, Philadelphia, PA, Harvey Bartle, IV, Paul Anton Zevnik, Morgan Lewis & Bockius LLP, Washington, DC, for Plaintiff.

Jerrald J. Hochman, Melvin R. Shuster, Siegal Napierkowski & Park, Mt. Laurel, NJ, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff ITT Industries, Inc. ("ITT") brought this action under an insurance policy issued to ITT in 1985 by defendant Pacific Employers Insurance Company ("PEIC"). ITT contends that under a claims handling agreement between ITT and PEIC, PEIC has been obligated, for at least the last twenty years, to pay defense, investigation, and settlement costs arising from suits brought against ITT's former subsidiary, Pennsylvania Glass Sand Corporation ("PGS") seeking damages for bodily injury arising out of alleged exposure to silica (the "Silica Suits"). ITT is subject to claims of indemnification for the Silica Suits brought against PGS, pursuant to a contractual agreement with Pacific Coast Resources ("PCR"), the entity that purchased PGS on September 12, 1985.

Before the Court today is PEIC's motion to dismiss the action or stay the proceedings. PEIC's motion to dismiss is based on the contention that the instant action is only a part of a much larger and more comprehensive coverage dispute involving more parties and issues than are named in the operative complaint. This comprehensive dispute, argues PEIC, is the subject of a contemporaneous declaratory judgment action in New York state court, and this Court should abstain from adjudicating this action in favor of the New York action.

For the reasons that follow, the Court will grant PEIC's motion, and stay the proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In 1985, PEIC issued an insurance policy to ITT for the period of January 1, 1985 through January 1, 1986 (the "Policy"). ITT alleges, and PEIC does not dispute, that under the Policy, PEIC has a duty to pay ITT's damages including defense and investigation costs, for Silica Suits alleging bodily injury during the Policy Period.

On September 12, 1985, ITT sold the capital stock of its subsidiary, Pennsylvania Glass Sand ("PGS"), to Pacific Coast Resources ("PCR"). Pursuant to the Agreement of Purchase and Sale of the Capital Stock ("Sale Agreement"), ITT entered into a contractual obligation to PCR to indemnify PCR for Silica Suits brought against PGS prior or subsequent to the closing date alleging that acts or omissions of ITT or PGS that took place prior to the closing date caused bodily injury. Sale Agreement, § 5.1(b).

On September 13, 1985, PEIC and ITT entered into an Amendatory Endorsement to the Contractual Liability portion of the Policy ("Endorsement # 44"). Endorsement # 44 provides:

> It is understood and agreed that the contractual liability coverage provided by the policy shall apply to those liabilities assumed by ITT Corporation in the "Contract of Sale" Section 5.1(b) *Lung Disease.*
>
> It is further agreed that those losses covered by the above-mentioned "Contract of Sale" shall be considered as occurring during this policy period re-

gardless of when the claim actually occurs.

> "Contract of Sale" means the sales agreement entered into between ITT Corporation and the Buyers of Pennsylvania Glass Sand.

ITT alleges that PEIC agreed to pay, and has actually paid, a portion of its obligations under the Policy for the Silica Suits but that on or about August 24, 2005, PEIC declared it would no longer honor its insurance obligations.

### A. *The Eastern District of Pennsylvania Action*

ITT filed this action against PEIC on October 4, 2005. The initial complaint was never served. On January 12, 2006, ITT filed an amended complaint, asserting five counts regarding the 1985 insurance policy issued by PEIC to ITT.[1] The counts are for: (1) breach of contract; (2) a declaratory judgment that PEIC is obligated to pay or reimburse the costs and expenses of the Silica Suits; (3) statutory remedies under 42 Pa.C.S. § 8371;[2] (4) a declaratory judgment that the product liability limits of certain insurance policies be replenished to the extent PEIC has impaired them; and (5) a declaratory judgment that to the extent any Silica Suits are asserted directly against ITT, and not against PGS, PEIC is obligated to provide coverage to ITT. ITT seeks damages and attorneys' fees and costs for Counts One and Five, and declarations and orders for Counts Two, Three, and Four.

On February 6, 2006, defendant moved to dismiss the action pursuant to Federal

---

1. The Amended Complaint was served.

2. 42 Pa.C.S. § 8371 provides:

   In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

   (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
   (2) Award punitive damages against the insurer.
   (3) Assess court costs and attorney fees against the insurer.

Rule of Civil Procedure 12(b), or for a stay of proceedings.

## B. *The New York State Court Action*

On January 13, 2006, PEIC, along with two other insurance companies,[3] filed an action in the Supreme Court of the State of New York for the County of New York against ITT (plaintiff in the action before this Court), U.S. Silica (formerly PGS, a former subsidiary of ITT) ("PGS–USS"), and various defendant insurers (the "New York action"). *ACE Fire Underwriters Insurance Company, et al. v. ITT Industries, U.S. Silica Corporation, et al.,* Index No. 600133/06. Plaintiffs in the New York action (including the defendant in the instant action) seek a declaratory judgment regarding their obligation to cover ITT and PGS for Silica Suits, and regarding reimbursement for amounts already paid that the insurers allege should not have been paid.

The counts in the New York action are as follows: (1) Against ITT and PGS–USS—what obligation, if any, plaintiffs have to defend and indemnify ITT and PGS–USS in connection with the Silica Suits; (2) Against ITT and PGS–USS—whether ITT is insured under any PEIC policy for Silica Suits for its indemnity agreement with PCR (purchaser of PGS–USS) for Silica Claims made against PGS–USS after September 12, 1995; (3) Against PGS–USS—what the effect is of PGS–USS's agreement to tender any Silica Claims not covered under the ITT indemnity to its own insurers; (4) Against ITT, PGS–USS, and defendant insurers-whether, and to what extent, ITT, PGS–USS, and the defendant insurers are obligated to share payment with plaintiffs of any defense or indemnity payments or obligations for which plaintiffs have paid, or will pay in the future, in connection with

the Silica Claims; and (5) Against ITT—whether ITT must reimburse PEIC for money paid by PEIC to ITT pursuant to contractual liability coverage for Silica Claims made against PGS–USS between September 12, 1995 and September 12, 2005.

On February 16, 2006, ITT filed two motions to dismiss or stay the proceedings in New York. The ACE plaintiffs filed their responses, and the motion is set for oral argument on or about April 21, 2006. In addition, various other defendant insurers have filed answers to the complaint.

## C. *The West Virginia State Court Action*

There is also an action pending in West Virginia state court. USS–PGS brought the West Virginia action against various insurance companies on January 6, 2006. Neither PEIC nor ITT is named in the action. Plaintiff seeks declaratory relief that the defendant insurers have a duty to provide coverage for the Silica Suits, and damages for breach of contract against certain of the defendant insurers that plaintiff has designated as primary insurers.

On February 28, 2006, some of the defendant insurers filed a joint motion to stay or dismiss the action. Responses were due on or before March 16, 2006, and any rebuttal was due ten days thereafter.

## II. THE MOTION TO DISMISS

### A. *The Standard to Apply*

Defendant PEIC requests the Court abstain from hearing this action, and to dismiss the complaint, or, in the alternative, enter a stay of proceedings pending the entry of final judgment in the New York action.

---

**3.** The ACE Fire Underwriters Insurance Company ("ACE") and Century.

In the usual turn of events, a district court has a "virtually unflagging obligation" to exercise its jurisdiction, and may only decline to exercise or postpone this jurisdiction "in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

However, in declaratory judgment cases, the Supreme Court has explained that "[d]istinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." *Wilton v. Seven Falls Company*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). *See also Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

Therefore, the standard the Court will apply to determine whether to maintain jurisdiction over the action turns on whether the action at issue is a declaratory judgment action. The case before the Court today, however, contains both declaratory claims and coercive claims, that is, claims for bad faith and breach of contract.

Although the Third Circuit has not spoken on whether actions containing both coercive and declaratory claims should be governed by *Colorado River* or *Wilton*, the Fifth and the Ninth Circuits have crafted different approaches to this situation.

The Fifth Circuit has fashioned a strict standard, stating that "when an action contains any claim for coercive relief, the *Colorado River* abstention doctrine is ordinarily applicable." *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n. 4 (5th Cir.2002). The court looks to such factors as whether the claim(s) for coercive relief are frivolous, or were added solely to defeat *Brillhart*. If not, the *Colorado River* standard applies. *Id.*

The Ninth Circuit directs district courts seeking to determine whether actions containing both declaratory and coercive claims are subject to discretionary or mandatory jurisdiction to "determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *United National Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir.2001). If so, the *Colorado River* standard applies.

Several courts within the Third Circuit have taken a third approach, and have looked to the "heart of the action" to determine if the standard of *Wilton* or that of *Colorado River* should apply. "If the outcome of the coercive claims hinges on the outcome of the declaratory ones, Wilton's standard governs; conversely, if the opposite applies, *Colorado River's* standard applies." *Coltec Industries Inc. v. Continental Ins. Co.*, 2005 WL 1126951, at *2 (E.D.Pa.2005). *See also Franklin Commons East Partnership v. Abex Corp.*, 997 F.Supp. 585 (D.N.J.1998) (claim for damages dependant on claim for declaratory relief; declaratory judgment action stayed in favor of pending state court proceeding pursuant to *Wilton*); *The Scully Co. v. OneBeacon Ins. Co.*, 2004 WL 1166594 (E.D.Pa.2004) (Padova, J.) (insurance coverage dispute termed declaratory when breach of contract and bad faith claims were dependant on outcome of declaratory judgment claim).

In *Coltec Industries Inc. v. Continental Ins. Co.*, a corporation sued its insurer

regarding the insurer's obligation to indemnify the corporation for asbestos claims. 2005 WL 1126951. The insurer moved to dismiss or stay the proceedings in favor of a parallel state court action. Because the action contained both declaratory and coercive claims, Judge Dalzell looked to the "heart of the action," to determine whether the court should apply the discretionary standard of *Wilton* or the "stringent general standard" of *Colorado River. Id.* at *2–3. Judge Dalzell found that the outcome of plaintiffs' claims for breach of contract and bad faith was dependent on how the insurance policies were interpreted for the declaratory judgment claim. Therefore, the action was, at heart, a declaratory judgment action, and the discretionary standard of *Wilton* applied. *Id.* at *3.

### B. *Application of the Standard to the Case at Hand*

In the instant case, PEIC argues that the core of the instant action is its three counts for declaratory judgment, and the Court should therefore apply the discretionary standard of *Wilton.* Plaintiff ITT responds that the instant action is, essentially, a breach of contract case, and is therefore governed by *Colorado River,* and not *Wilton.*

■ The Court must decide whether to follow the categorical approaches suggested by the Fifth and Ninth Circuits, or the "heart of the matter" approach undertaken by courts in this circuit. The Court finds that the considerations underlying the decisions in *Colorado River* and *Wilton* regarding a district court's obligation to exercise jurisdiction over an action are better served by the fact-driven "heart of the matter" approach than the application of a bright-line rule. The *Wilton* Court explained that "the breadth of leeway we have always understood [the Declaratory Judgment Act] to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface." 515 U.S. at 286, 115 S.Ct. 2137. To apply the *Colorado River* standard to actions containing both declaratory judgment and coercive claims without an analysis of the facts at hand would be to ignore the Supreme Court's specific recognition that declaratory judgment actions necessitate a different treatment than other types of cases.

■ In this case, the amended complaint contains claims for bad faith and breach of contract in addition to those for declaratory judgment. Nevertheless, cutting through the rhetorical fog of the pleadings, the Court finds that the essence of the dispute concerns the scope of the insurance coverage for the Silica Suits. To wit, ITT asks for the Court's declaration that PEIC "is obligated to pay or reimburse the costs and expenses ... of the Silica Suits." Am. Compl. ¶ 26. Accordingly, the Court must rule on this question before reaching the issue of whether PEIC has "failed or refused to meet these contractual demands and failed or refused to acknowledge, accept or undertake, its contractual obligation." Am. Compl. ¶ 22. To do so, the Court will have to interpret the relevant insurance policies, and make a judgment on their scope and reach before ruling on the breach of contract or bad faith claims. In other words, the outcome of the bad faith and breach of contract claims depends on the resolution of the declaratory judgment claims. At its heart, this dispute is a declaratory judgment action.

### C. *Are the Actions Parallel?*

■ When determining whether to stay or dismiss an action under the *Wilton* standard, the Court must first inquire whether the action pending in state court

is actually parallel to that before the Court today. "For judicial proceedings to be parallel, there must be identities of parties, claims, and time." As we noted in *Yang v. Tsui,* "[P]arallel cases involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues.'" *IFC Interconsult, AG v. Safeguard International Partners, LLC,* 438 F.3d 298, 306 (3d Cir.2006) (citing *Yang v. Tsui,* 416 F.3d 199, 205 (3d Cir.2005)).

■ Both parties before the Court are before the New York state court. The presence of additional parties in the New York action does not bear on whether abstention here is proper. The Third Circuit has stated that it has "never required complete identity of the parties for abstention." *IFC,* 438 F.3d at 306. *See also Flint v. A.P. DeSanno & Sons,* 234 F.Supp.2d 506, 510 (E.D.Pa.2002) ("The presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action.").

The Court next turns to the claims. PEIC argues that "the same issues of insurance policy construction, including scope of coverage and construction of the ITT–PGS indemnity agreement and its extension, lie at the heart of both the present action and the New York state action." Mot. to Dismiss. On the other hand, ITT contends that "there is no question that the claims in each case will require the two courts to adjudicate different claims and analyze different issues. While both cases

include declaratory claims relating to [PEIC's] contractual indemnity obligation, ITT's complaint includes claims for breach of contract and statutory remedies under Pennsylvania law." Opp. to Mot. to Dismiss.

The crucial question here is not whether the claims are exactly the same in the federal and the state action, but whether the issues the courts will need to analyze are substantially identical. A careful comparison of the claims asserted in both forums compels the answer that they are. The following are lists of the counts brought in each action:

***Eastern District of Pennsylvania action***

| Parties: | Plaintiff: ITT |
| | Defendant: PEIC |

| Count I: | Breach of contract: PEIC breached contract with ITT to cover Silica Suits—$30 million damages. |
| Count II: | Declaratory judgment that PEIC is obligated to pay or reimburse the costs and expenses of the Silica Suits. |
| Count III: | Statutory remedies under 42 Pa.C.S. § 8371.[4] |
| Count IV: | Declaratory judgment that the product liability limits of certain Policies be replenished to the extent PEIC has impaired them. |
| Count V: | Declaratory judgment that to the extent any Silica Suits are asserted directly against ITT, and not against PGS, PEIC is obligated to provide coverage to ITT. |

***New York state action***

| Parties: | Plaintiffs: ACE[5], PEIC, Century Defendants: ITT, U.S. |

4. 42 Pa.C.S. § 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by

the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

5. ACE Fire Underwriters Insurance Company ("ACE").

Silica (formerly PGS) ("PGS–USS"), Defendant Insurers

Count I: Against ITT and PGS–USS—what obligation, if any, plaintiffs have to defend and indemnify ITT and PGS–USS in connection with the Silica Suits.

Count II: Against ITT and PGS–USS—whether ITT is insured under any PEIC policy for Silica Suits for its indemnity agreement with PCR (purchaser of PGS–USS) for Silica Claims made against PGS–USS after September 12, 1995.

Count III: Against PGS–USS—what the effect is of PGS–USS's agreement to tender any Silica Claims not covered under the ITT indemnity to its own insurers.

Count IV: Against ITT, PGS–USS, and defendant insurers—whether, and to what extent, ITT, PGS–USS, and the defendant insurers are obligated to share payment with plaintiffs of any defense or indemnity payments or obligations for which plaintiffs have paid, or will pay in the future, in connection with the Silica Claims.

Count V: Against ITT—whether ITT must reimburse PEIC for money paid by PEIC to ITT pursuant to contractual liability coverage for Silica Claims made against PGS–USS between September 12, 1995 and September 12, 2005.

ITT argues that its breach of contract and bad faith claims are not covered in, and will not be adequately adjudicated by the New York state action. ITT claims that PEIC owes it more than $20,000,000 in damages for its failure to fully indemnify ITT for the Silica Claims under its contractual obligation. While it is true that the New York action does not explicitly include ITT's claim for breach of con-

tract, this claim is covered by Counts I, II, IV, and V of the New York action. ITT has put forward no reasons why this claim can not be asserted as a counterclaim pursuant to Section 3019 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 3019(a) (McKinney 2006), or why it could not be adequately adjudicated by the New York state court.

ITT's complaint before this Court also includes a claim under Pennsylvania's bad faith statute, 42 Pa.C.S. § 8371, which provides remedies for an insured against whom an insurer has acted in bad faith. ITT argues that this claim may not be adequately adjudicated in New York state court, citing to *Frazer Exton Development, LP v. Kemper Environmental, Ltd.*, 2004 WL 1752580 (S.D.N.Y.2004), to show that New York does not have a law regulating bad faith practices in claims handling, as does Pennsylvania. However, in *Frazer*, a New York court, albeit a federal court, reached a resolution under Pennsylvania law. There is no reason why a New York state court would not be perfectly able to do the same.[6]

Count II of the action before the Court today is a declaratory judgment claim that PEIC is obligated to pay the costs of the Silica Suits. Count IV asks the Court to issue a declaratory judgment regarding the replenishment of product liability limits of certain policies to the extent they have been wrongly impaired by PEIC. Both of these Counts involve the scope and limits of the insurance policy under which ITT alleges PEIC is obligated to pay the Silica Claims, and are covered by Counts I, II, IV, V, and potentially III in the New York action.

---

**6.** In addition, it does appear that New York has adopted a common law tort for the bad faith breach of contract by an insurer. *Batas v. Prudential Insurance Company of America,* 281 A.D.2d 260, 271, 724 N.Y.S.2d 3, 12 (N.Y.App.Div.2001). The *Batas* court explains that this tort is narrow, but available. *Id.*

Finally, Count V of ITT's complaint requests a declaratory judgment that PEIC must provide coverage to ITT if any suits are directly asserted against ITT, not against PGS. All of the facts alleged in the complaint, and Counts I through IV, involve the indemnification provided to PGS by ITT, and PEIC's contractual obligation related to this indemnification. The complaint does not state facts involving any direct suits against ITT, nor does ITT allege it has actually been directly sued.

■ The Declaratory Judgment Act allows a party to request a federal court, in a "case of actual controversy within its jurisdiction," to declare its rights and other legal relations, whether or not it will, or could, seek further relief. 28 U.S.C. § 2201(a). A case of "actual controversy", as interpreted by the United States Supreme Court, is one "of a justiciable nature." *Wyatt, Virgin Islands, Inc. v. Government of the Virgin Islands*, 385 F.3d 801, 805–06 (3d Cir.2004) (citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 325, 56 S.Ct. 466, 80 L.Ed. 688 (1936)). The controversy must be, "definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Aetna Life Insurance Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

■ The issue of ripeness is also relevant here—"A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 807 (quoting *Doe v. County of Centre, PA*, 242 F.3d 437, 453 (3d Cir.2001) (internal citation omitted)).

■■ The dispute in Count V meets neither the "actual controversy" standard of the Declaratory Judgment Act, nor is it ripe for judicial determination. As far as the Court can tell, Count V involves a hypothetical state of facts, stating a "nebulous and contingent" controversy. *Id.* at 806.

The Court concludes that all of the currently justiciable claims in the action before it today, brought by ITT, are fully covered by, and are substantially identical to, the claims brought in the New York state action.[7] The actions are sufficiently parallel.

### D.  *Application of the Wilton Standard*

■ When determining whether to stay or dismiss a declaratory judgment action involving insurance coverage issues, the Third Circuit has put forward three relevant considerations for a district court to take into account:

1. A general policy of restraint when the same issues are pending in a state court;

2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;[8] and

3. Avoidance of duplicative litigation.

*State Auto Insurance Companies v. Summy*, 234 F.3d 131, 134 (3d Cir.2000) (citing *United States v. Commonwealth of Penn-*

---

7. If the conflict in Count V is or does become an actual controversy, there is also no reason why it could not be asserted in the New York action.

8. This factor is not applicable in this case.

sylvania, Department of Environmental Resources, 923 F.2d 1071, 1075–76 (3d Cir. 1991)). In Summy, the court also looked at whether any federal interests would be promoted by keeping the case in district court, and whether judicial efficiency would be promoted by the maintenance of concurrent jurisdiction. Summy, 234 F.3d at 135–36.

### 1. A general policy of restraint when the same issues are pending in a state court

The Summy court counseled that federal courts should hesitate "in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled." 234 F.3d at 135. Further, the court stated that district courts "should give serious consideration to the fact that they do not establish state law, but are limited to predicting it." Id. In Summy, the federal court located in Pennsylvania was determining whether to stay or dismiss an action when there was a potentially parallel state action also in Pennsylvania. This was also the case in United States v. Commonwealth of Pennsylvania, Department of Environmental Resources, 923 F.2d 1071 (3d Cir.1991), and Terra Nova Insurance Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213 (3d Cir.1989), cases in which the general policy of restraint standard was articulated.

Here, the parallel state court action is in New York. There is no dispute that the Agreement of Purchase and Sale of the Capital Stock of PGS, containing the indemnification agreement at issue, contains a choice of law provision providing that:

> This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York, without application of any choice of law provisions if the same would require any law other than the laws of New York.

Mot. to Dismiss, Ex. D, ¶ 6.9.

However, the parties dispute the law under which the insurance policies at issue will be construed. PEIC asserts that, because the policies at issue were issued to ITT in New York, New York law "will govern the rights and duties, if any, under those policies." Mot. to Dismiss. At oral argument, ITT opposed this contention, arguing that Pennsylvania law would apply to the policies.

Here, whether the law of New York, Pennsylvania, or of any other jurisdiction applies, the parties have not asserted the existence of any novel or complex issues of law. Because the questions in this case entail law that is neither close nor unsettled, and because neither the Pennsylvania federal court nor the New York state court would have superior expertise in handling these questions, the factor urging district courts to show restraint does not here weigh heavily either on the exercise of jurisdiction, or the issuance of a stay or dismissal.

### 2. The avoidance of duplicative litigation

The Summy court emphasizes that "[a] federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." 234 F.3d at 135. This admonition is consistent with the Supreme Court's direction in Wilton that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." 515 U.S. at 288, 115 S.Ct. 2137.

It is clear that exercising jurisdiction over the instant action will result in piece-

meal and duplicative litigation. The actions are essentially in the same beginning stage of litigation; dispositive motions have not been ruled on nor has discovery begun. The date on which the actions were commenced is irrelevant. *See Summy,* 234 F.3d at 135.

This action and that in the New York state court are parallel, involving the same issues and parties. The New York court, like this Court, would have to determine what state's law applies to the insurance policy issued by PEIC to ITT, and interpret the parties' obligations under this insurance policy, as well as under Endorsement # 44 to the Policy. Both courts would have to construe the indemnity provision of the Agreement of Sale and Purchase. Finally, both courts would have to determine the central issues of the parties' rights and obligations in regards to the cost of litigating the Silica Suits. It would be inefficient for both the New York court and this Court to consider the same evidence, as would be necessary to resolve the issues pending before the two courts.

If the Court decides the issues in the action before it today, it will necessarily have an effect on the litigation in the New York action, and vice versa. The two litigations should not proceed simultaneously.

3. *There are no compelling reasons for this Court to exercise jurisdiction.*

There are certain situations in which a district court may not decline to hear a declaratory judgment action. The Third Circuit has stated that a district court does *not* have discretion to decline jurisdiction over a declaratory judgment action "when the issues included federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding." *Summy,* 234 F.3d at 134 (quoting *Department of Environmental Resources,*

923 F.2d at 1076–79.). None of these considerations are at issue here.

Plaintiff argues that its choice of forum should be given great deference. In the context of determining a more convenient forum, this factor is allotted less weight when the plaintiff chooses a forum that is not its home state. *See, e.g., Saint–Gobain Calmar, Inc. v. National Products Corp.,* 230 F.Supp.2d 655, 659 (E.D.Pa. 2002) ("A plaintiff's choice of forum, however, is entitled to less weight where the plaintiff chooses a forum which is neither his home nor the situs of the occurrence upon which the suit is based."); *National Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 462 (E.D.Pa.1998) (same). Plaintiff is not a Pennsylvania corporation, and, in addition, the place where the breach of contract occurred as well as the law that will be applied to the insurance policies are in dispute.

Finally, it appears that both parties will be able to adequately litigate all pertinent issues and defenses in the New York action. *See Wilton,* 515 U.S. at 282, 115 S.Ct. 2137 (a district court should consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.") (quoting *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

For the above reasons, the Court will "step back," *Summy,* 234 F.3d at 135, and allow the New York state court to adjudicate this matter. The same issues are pending before both courts, maintaining jurisdiction here would result in piecemeal and duplicative litigation, and there is no compelling reason for the Court to exercise jurisdiction.

██ Additionally, the Court will not dismiss the instant action, but will issue a stay pending resolution of the New York state action. *Wilton,* 515 U.S. at 288 n. 2, 115 S.Ct. 2137 ("where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy"). ITT will have the option of moving to place the case on the active docket if it becomes clear that the New York court will not be able to adequately adjudicate one or more of ITT's issues.

## III. CONCLUSION

For the foregoing reasons, the action before the Court will be stayed pending disposition of the New York state action.

### *ORDER*

**AND NOW,** this **13th** day of **April 2006,** upon consideration of Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b) or, in the Alternative, Enter a Stay of Proceedings (doc. no. 5) and Plaintiff's Response thereto (doc. no. 7), and after a hearing at which counsel for both parties participated, it is hereby **ORDERED** that Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b) or, in the Alternative, Enter a Stay of Proceedings (doc. no. 5) is **GRANTED.**

**IT IS FURTHER ORDERED** that the case shall be **STAYED** pending further Order of the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Reply Memorandum of Law (doc. no. 14) is **GRANTED.**

**AND IT IS SO ORDERED.**