IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 8, 2009

No. 08-30361

Charles R. Fulbruge III
Clerk

LAC REAL ESTATE HOLDINGS, L.L.C. AND CARMA HOLDINGS, L.L.C.

Plaintiffs-Appellants

v.

BILOXI MARSH LANDS CORPORATION; THE MABEL ISABEL MOLERO
QUATROY REVOCABLE LIVING TRUST; DOROTHY LOUISE O'TOOLE
BENGE; PATRICIA C. O'TOOLE; LENA R. TORRES, CLERK OF COURT
OF ST. BERNARD PARISH; JACK A. STEPHENS, SHERIFF OF ST.
BERNARD PARISH; MARLENE VINSANAU, ASSESSOR OF ST.
BERNARD PARISH

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-02962

Before DAVIS, SMITH and OWEN, Circuit Judges.

DAVIS, Circuit Judge[*]

Plaintiffs LAC Real Estate Holdings, L.L.C. and Carma Holdings, L.L.C.

appeal the judgment of the district court staying this case in favor of parallel

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

state court litigation. Based on our conclusion that this case presents an exceptional circumstance to which *Colorado River* abstention applies, we affirm.

I.

This case involves a dispute concerning the entitlement to gas royalties from a parcel of marsh land in St. Bernard Parish. The state litigation commenced when Biloxi Marsh Lands Corporation (Biloxi) filed a Petition for Possessory Action (the Possessory Action ) in the 34th Judicial District Court in St. Bernard Parish, Louisiana (State Trial Court) in November 2001. Two sets of defendants were named: (1) the Mabel Isabel Molero Quatroy Revocable Living Trust; Dorothy Louise O'Toole Benge; Patricia C. O'Toole (collectively Molero), and (2) LAC Real Estate Holdings, L.L.C. and Carma Holdings, L.L.C. (collectively LAC). In the Possessory Action, Biloxi is seeking to have the court determine which party has the right to possess certain property, described as the entirety of Sections 1, 2, and 3, Township 13 South, Range 16 East, St. Bernard Parish, Louisiana (the Property).

Several months later, Molero, one of the defendant groups in the Possessory Action, filed a separate suit with the State Trial Court claiming ownership of the Property and seeking to enjoin Biloxi and LAC from trespassing (Declaratory Judgment Action). Because this action involved common issues of law and fact, the same Property, and the same parties, the State Trial Court consolidated Molero's suit with the Possessory Action.

The two oil companies that took leases from all of the parties and that discovered and are producing natural gas from the Property filed concursus suits in the State Trial Court. The concursus proceedings named Biloxi, LAC, and Molero as defendants and required the parties to assert their respective claims of ownership to the Property (and the royalties resulting from production from the Property). The State Trial Court also consolidated the concursus cases with

the previously consolidated Possessory Action and Declaratory Judgment Action (collectively, the Consolidated Actions).

Biloxi filed a Motion to Set Litigation Procedure in the Consolidated Actions in which it argued that the court must first determine who is in possession of the Property prior to determining the issue of ownership. The State Trial Court disagreed and denied the motion. Biloxi then sought review of that order. The Louisiana Fourth Circuit granted Biloxi's writ in part, stating that the State Trial Court must determine possession before ownership because under Louisiana law the burden of proof on the party seeking to establish ownership is more onerous if an adverse party is entitled to possession. The Louisiana Supreme Court denied Molero's subsequent application for a writ of certiorari.

LAC made several more attempts to challenge the order in which the Consolidated Actions would proceed. First, LAC filed a Motion for Partial Summary Judgment challenging the validity of a 1914 tax sale to a party in Biloxi's chain of title to the Property. LAC's motion contended that the tax sale was void for lack of notice and argued that the sale violated the due process rights of LAC's predecessors in title under *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800 (1983), and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). The State Trial Court stayed the motion until the issue of possession was resolved. LAC appealed and the Louisiana Fourth Circuit denied the writ. The Louisiana Supreme Court denied LAC's application for a writ of certiorari.

Next, LAC filed a motion to set the Motion for Partial Summary Judgment for hearing. The State Trial Court granted the motion after a hearing, but, upon appeal by Biloxi, the Louisiana Fourth Circuit reversed, restating its original order that the trial court must first determine whether relator has the right to

3

possession before considering the issue of ownership. The Louisiana Supreme Court denied LAC's application for writ of certiorari.

LAC then filed two state court suits in the 34th Judicial District to annul two tax sales in the chain of title to the Property. The tax sales occurred in 1914 and 1929. Biloxi and Molero filed exceptions of lis pendens and prematurity. The state court granted those exceptions and dismissed the suits.

Finally, LAC filed this federal suit alleging a violation of its due process rights. In its complaint, LAC sought a "hearing and order directing the Clerk of Court of St. Bernard Parish to cancel the said unconstitutional 1914 and 1929 tax sales" and "a judgment declaring the amount of any back taxes which plaintiffs may owe as a result of the cancellation of the tax sales and tax confirmation." Biloxi filed a motion to dismiss, or alternatively stay the proceedings.

The district court's ruling on the motion is not entirely clear. During the hearing on the motion, the district court discussed *Colorado River* abstention and the factors the district court is required to consider under that doctrine. At the end of the hearing, the district court also discussed the *Rooker-Feldman* doctrine and concluded that if the federal district court entered a judgment in this case, it would be "tacitly, if not directly, reversing decisions of prior appellate courts in this particular matter." The district court stated that it would not grant the motion to dismiss but rather would abstain under *Rooker-Feldman* and adopted the arguments filed by Biloxi in support of the motion. Biloxi argued both *Rooker-Feldman* and several bases for abstention, including *Colorado River* abstention, in support of its motion. We read the district court's statements as making two alternative holdings: to abstain under *Rooker-Feldman* and to abstain under *Colorado River* as discussed in the hearing and argued in Biloxi's brief in support of the motion. LAC timely appealed.

II.

The *Rooker-Feldman* doctrine arises from two cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In those cases, the Supreme Court explained that lower federal courts lack the power to modify or reverse state court judgments because 28 U.S.C. § 1257 vests exclusive jurisdiction to review or modify a state court judgment in the Supreme Court. "The *Rooker-Feldman* doctrine . . . is confined to cases of the kind in which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* has no application to this case. LAC is not "the losing party in state court . . . after the state proceedings ended." *Id.* at 291. The state court proceedings are still pending and no final judgment has been rendered. Rather this case involves parallel state and federal litigation, in which circumstance "[c]omity or abstention doctrines may . . . permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Id.* at 292. [1]

### III.

We turn then to consider whether the district court properly stayed the federal case in deference to the state court proceedings. We review a district court's decision to stay a case pending the outcome of parallel proceedings in state court for abuse of discretion. *Kelly Inv., Inc. v. Cont'l. Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002). We review de novo whether the requirements of

---

[1] We note also that if *Rooker-Feldman* had applied, the district court would have been without jurisdiction to consider the case and the proper remedy would have been to dismiss, rather than stay, the case.

a particular abstention doctrine are satisfied. *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002).

*Colorado River* abstention is applied to avoid duplicative litigation when parallel proceedings are pending in federal and state court. *Diamond Offshore Co. v. A & B Builders*, 302 F.3d 531, 538-40 (5th Cir. 2002). "Suits are parallel, for the purposes of determining whether *Colorado River* abstention applies, if they involve the same parties and the same issues." *Id.* at 540 (alterations and quotations marks omitted). The issues in this federal action clearly overlap the issues in the Consolidation Actions. LAC simply seeks in this case to have the *Mennonite* issues central to its ownership claim heard earlier than the state court rules will allow. Also, the parties in the Consolidated Actions are nearly identical to the federal suit. All of the parties in this case have been named in one or more of the state court suits, either in the Consolidated Actions or the suits to annul the 1914 and 1929 tax sales or both, except for the St. Bernard Parish Clerk of Court, Assessor and Sheriff. This is sufficient for the state and federal court proceedings to be parallel.

Under *Colorado River*, a district court may abstain from a case only under "exceptional circumstances." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (U.S. 1976). In deciding whether "exceptional circumstances" exist, the Supreme Court has identified six nonexclusive factors to consider:

(1) assumption by either court of jurisdiction over a res,

(2) relative inconvenience of the forums,

(3) avoidance of piecemeal litigation,

(4) the order in which jurisdiction was obtained by the concurrent forums,

(5) to what extent federal law provides the rules of decision on the merits, and

(6) the adequacy of the state proceedings in protecting the rights of

the party invoking federal jurisdiction

*Diamond Offshore*, 302 F.3d at 540, n. 6 (quoting *Black Sea Inv. Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000)). The factors are not applied mechanically, but must be carefully balanced "with the balance heavily weighted in favor of the exercise of jurisdiction." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006)(quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)).

While acknowledging that abstention is a "rare creature and must meet certain criteria," the district court considered the above factors and exercised its discretion to abstain. The district court noted that the federal court had not assumed jurisdiction over any res, whereas the oil and gas royalties from the property in question have been deposited into the registry of the State Trial Court. It concluded that the second factor is neutral because there was no inconvenience to the parties to try the case in the State Trial Court in St. Bernard Parish rather than in federal court in New Orleans, Louisiana. The district court found that the third and fourth factors weighed strongly in favor of abstention, namely, the desire to avoid piecemeal litigation and the order in which jurisdiction was obtained. The court noted that this case had been litigated in state court since early 2001 and had been the subject of several appeals on the subject of procedure. It also recognized that the State Trial Court was not refusing to hear the *Mennonite* issue the plaintiffs were raising in the federal suit; it had simply decided to try possession first to establish the burdens of proof under state procedural law. On the related fifth and sixth issues, although federal law is implicated in the *Mennonite* issue, the district court noted that the State Trial Court was not denying LAC the right to raise the constitutional claim, rather it had stated the methodology and order by which the *Mennonite* issue would be decided with respect to the interrelated issue of

possession and ownership in the state case. Accordingly, the district court found that the state court proceedings were adequate to protect the federal plaintiff's rights.

We agree with the district court's analysis of the *Colorado River* factors. In particular these parallel cases create a danger of piecemeal litigation. The state court will eventually reach the *Mennonite* issue that LAC seeks to be heard in the federal district court. Resolution of the *Mennonite* issue by the federal district court will not decide or significantly reduce the litigation in the State Trial Court, which would still be required to try possession and ownership. The State Trial Court's own procedural rules dictate the order in which the case will be tried, a methodology which LAC has repeatedly and unsuccessfully challenged in the Louisiana courts. The district court did not abuse its discretion by declining to hear the single issue in this case and upset the State Trial Court's determined procedure.

## IV.

For the foregoing reasons, the judgment of the district court staying the federal court case in favor of the cases proceeding in the State Trial Court is affirmed.

AFFIRMED.