United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 23, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 05-30090
_____


LONNIE BROWN; ET AL.,

                      Plaintiffs,

versus

PACIFIC LIFE INSURANCE CO; ET AL.,

                      Defendants.

--------

CITIGROUP GLOBAL MARKETS, INC; SMITH BARNEY,

                      Plaintiffs-Intervenor Defendants-Appellees,

PACIFIC LIFE INSURANCE CO; GE LIFE AND ANNUITY INSURANCE COMPANY,

                      Intervenor-Plaintiffs-Appellees,

versus

JERRY O. BROWN; PAT BROWN,

                      Defendants-Intervenor Defendants-Appellants,

LONNIE BROWN; NETTIE BROWN,

                      Intervenor Defendants-Appellants.

--------

CITIGROUP GLOBAL MARKETS INC; SMITH BARNEY,

                      Plaintiffs-Appellees,

versus

LONNIE BROWN; NETTIE BROWN,

Defendants-Appellants.

---

Appeal from the United States District Court
For the Middle District of Louisiana

---

Before JOLLY, SMITH, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Lonnie Brown, Nettie Brown, Jerry Brown, and Pat Brown ("the Browns") appeal from an order staying proceedings and compelling arbitration of their claims against Citigroup Global Markets, Inc., formerly Smith Barney ("Smith Barney"), G.E. Life & Annuity Insurance Company ("GE"), and Pacific Life Insurance Company ("Pacific") (collectively "Appellees").

I

The Browns are investors in, and beneficiaries of, Smith Barney securities brokerage accounts. Smith Barney's representative, Patrick Holt ("Holt"), managed these accounts, investing in variable annuities from GE and Pacific, as well as a variety of stocks.

Upset with Holt's investment decisions, the Browns sued Smith Barney, GE, Pacific, and Holt in Louisiana state court ("the State Action"), alleging fraud, negligence, and breach of various common law and statutory duties. The defendants removed the State Action to federal district court. Soon thereafter, Smith Barney, with intervenors GE and Pacific, filed two separate civil actions against the Browns in federal court ("the Federal Actions"): one against Lonnie and Nettie Brown, and one against Jerry and Pat Brown. Both lawsuits sought an order compelling arbitration of the Browns' claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, based on

arbitration clauses that were included in Smith Barney's client agreement with the Browns. Appellees

also moved for a stay pending arbitration in the State Action pursuant to section 3 of the FAA.[1]

Soon thereafter, Smith Barney and Pacific moved to compel arbitration under the FAA in the

Federal Actions. Around this time, the district court consolidated the State Action with the Federal

Actions. Smith Barney, with Pacific joining, then filed a reply in support of the motions to compel

arbitration and to stay the consolidated action, arguing for a stay based upon section 3.

---

[1]     "The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986) ("If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay."). Section 4 provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4; *see Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir. 1987) (noting that, under section 4, a district court must direct the parties to proceed to arbitration of issues covered by an arbitration agreement).

Contemporaneously with this flurry of activity, the Browns moved to remand the State Action as untimely removed. They also moved to dismiss the Federal Actions and the complaints in intervention on jurisdictional grounds, asserting that Holt, a non-party to the Federal Actions, is an indispensable party under Federal Rule of Civil Procedure 19 whose joinder would destroy diversity of citizenship. They also argued that the court should abstain from exercising jurisdiction. The district court remanded the State Action but denied the motion to dismiss the Federal Actions. Rather than consider the issue of arbitrability, however, the court stayed the Federal Actions pending the outcome in the remanded State Action because "[i]t would be a waste of judicial resources and of the parties' time and treasure if both federal and the state court were to proceed simultaneously in these cases . . . ."

The Appellees moved in the Federal Actions to alter or amend the stay order, arguing that the policy favoring arbitration required lifting the stay and ordering arbitration despite the threat of piecemeal litigation in state and federal court. The district court agreed, vacating the stay as improvidently issued and ordering additional briefing addressing the issue of arbitrability.

After receiving briefing, the district court addressed the "sole issue to be decided" in the Federal Actions—arbitrability of the Browns' claims against the Appellees. The district court concluded that the Browns were bound by an arbitration clause in their client agreements and were compelled to arbitrate their claims against Smith Barney. It also concluded that the actions of Smith Barney, intervenors GE and Pacific, and Holt were "inextricably intertwined" because "[t]here is no way to bring actions against either [GE or Pacific] without considering the actions of Smith Barney and its employee, Patrick Holt." Applying equitable estoppel, the court then ordered arbitration of the claims against Pacific and GE as well. Without offering a basis for its authority, the district court

then "stay[ed] the Browns' actions against all the defendants within its jurisdiction, to include Smith Barney, Pacific, and GE pending binding arbitration."

## II

The Browns appeal from the district court's order compelling arbitration and staying proceedings. Appellees contend that this court does not have jurisdiction to hear the Browns' appeal. As always, we have "jurisdiction to determine our own jurisdiction." *Cerveceria Cuauhtemoc Moctezuma S.A. de C.V. v. Mont. Beverage Co.*, 330 F.3d 284, 286 (5th Cir. 2003).

Section 16(b) of the FAA forbids appeals of interlocutory orders granting a stay under section 3 or directing arbitration to proceed under section 4.[2] However, "a final decision with respect to an

---

[2] 9 U.S.C. § 16 provides:

(a) An appeal may be taken from--
    (1) an order--
        (A) refusing a stay of any action under section 3 of this title,
        (B) denying a petition under section 4 of this title to order arbitration to proceed,
        (C) denying an application under section 206 of this title to compel arbitration,
        (D) confirming or denying confirmation of an award or partial award, or
        (E) modifying, correcting, or vacating an award;
    (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
    (3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
    (1) granting a stay of any action under section 3 of this title;
    (2) directing arbitration to proceed under section 4 of this title;
    (3) compelling arbitration under section 206 of this title; or
    (4) refusing to enjoin an arbitration that is subject to this title.

arbitration" is appealable under section 16(a)(3). A decision is considered final under the FAA if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000).

In this case, the district court granted the sole remedy sought by the plaintiffs in the Federal Actions—an order compelling arbitration. Although the district court did not dismiss the case, there was nothing left for the court to do but execute the judgment. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002) (holding that the district court's decision was final and appealable where it ordered arbitration, stayed proceedings, and closed the case). Under *Green Tree*, the order compelling arbitration in the Federal Actions ended the litigation in federal court on the merits and was a final appealable decision under 9 U.S.C. § 16(a)(3). *See Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 668 (5th Cir. 1994) ("The civil action was an independent proceeding brought solely to test arbitrability and stay the various law suits. The arbitration order amounts to a final disposition in this context and ends the litigation."); *McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 746 (5th Cir. 1993) ("Generally, if the only issue before the court is the dispute's arbitrability, . . . a court's decision on that issue constitutes a final decision.").

Appellees argue that the stay in this case rendered the order non-appealable under 9 U.S.C. § 16(b)(1). *See* 9 U.S.C. § 16(b)(1) (specifying that an appeal may not be taken from an interlocutory order granting a stay under 9 U.S.C. § 3). That it stayed the Browns' actions within its jurisdiction is, however, of no moment unless the stay was of proceedings before the district court under 9 U.S.C. § 3. Here, the district court did not state the authority for its stay, and it is impossible to discern from the record whether the district court thought its stay was issued pursuant to section 3. Although the only authority cited in the parties' motions was section 3, the court's terse statement that it was

-6-

staying "the Browns' actions against all the defendants within its jurisdiction" is subject to multiple plausible interpretations.[3]

We must speculate upon the authority for the stay based upon brief language in the order, the numerous overlapping and multifarious motions of the parties, and our interpretation of the voluminous district court filings in three separate cases—cases that have been consolidated and separated, removed and remanded. Under such circumstances, remand to the district court for clarification is often required. *See, e.g., Joseph v. City of New Orleans*, 110 F.3d 252, 253 (5th Cir. 1997) (remanding to the district court to clarify its order where such clarification was needed to determine appellate jurisdiction).

Remand is unnecessary in this case. Based upon our independent review of the record, we conclude that the stay could not have been issued pursuant to 9 U.S.C. § 3. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins.*, 304 F.3d 476, 481-82 (5th Cir. 2002) (reviewing the district court's

---

[3] For example, Appellees suggest that the prior consolidation of the Federal Actions and State Action placed the entire litigation within the scope of the district court's federal jurisdiction:

> Here the Smith Barney Actions were actually consolidated with the removed State proceeding, and thus the district court had jurisdiction over the State Proceeding at one time. As a result, when the district court stayed the State Proceeding, it was staying the underlying litigation that was at one time consolidated before the district court. Therefore, the district court's Arbitration Order staying the State Proceeding was not a final decision under the *Green Tree* line of cases.

By contrast, the district court could have stayed proceedings pursuant to 28 U.S.C. § 2283. Under section 2283, a district court has the authority to stay proceedings in state court where necessary to protect or effectuate its judgment. Here, such a stay may have been needed to protect the district court's determination that the Browns' claims against the Appellees be arbitrated rather than adjudicated in state court. The Browns have not challenged on appeal the district court's stay of the state court proceeding.

arbitration order and the record to determine appellate jurisdiction); *In the Matter of Legel, Braswell Gov't Sec. Corp.*, 648 F.2d 321, 326 n.8 (5th Cir. Unit B 1981) ("Where a district court fails to make necessary findings, a remand for entry of such findings is the usual recourse for an appellate court; however, where all of the issues on appeal may be fairly resolved from the record presented, a remand may not be required."). That section, by its terms, does not authorize a federal court to enjoin ongoing state proceedings—such as the remanded State Action—only federal proceedings. And, furthermore, the record discloses that there was nothing left for the district court to stay in the Federal Actions after it remanded the State Action and ordered the parties to the arbitration table. Unless the district court was staying some undefined or future proceedings in the Federal Actions, its stay order could have only applied to actions against the Appellees in the remanded State Action.[4] Such a stay could not be properly issued pursuant to section 3.[5]

---

[4] This situation is similar to that addressed by Judge Dennis in his concurrence in *American Heritage*:

> [T]he stay of the state-court proceedings does not impact our jurisdictional analysis. Although section 3 of the FAA allows courts to stay litigation brought before them, the statute does not authorize federal courts to enjoin ongoing state proceedings. Consequently, the district court did not grant "a stay of any action under section 3 of this title . . . ." More importantly, because the district court reached final decisions with respect to arbitration, the stay component of its orders did not transform them into unappealable "interlocutory order[s]" under section 16(b). "There is nothing interlocutory about an order compelling arbitration that does all that the court has to do." Accordingly, the stay does not prevent us from exercising appellate jurisdiction.

294 F.3d at 714 (citations omitted).

[5] "Through Section 16, Congress intended to promote arbitration by 'permitting interlocutory appeals of orders favoring litigation over arbitration and precluding review of interlocutory orders that favor arbitration.'" *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) (quoting

We hold that the district court did not issue a section 3 stay and, furthermore, that the arbitration order is a final decision under *Green Tree* and 9 U.S.C. § 16(a)(3). Accordingly, the order is appealable.

III

Having determined our jurisdiction on appeal, we turn to the Browns' contention that the district court erred by: (A) exercising jurisdiction over the Federal Actions; (B) refusing to abstain from exercising jurisdiction; (C) ruling that the arbitration agreement is valid and binding; and (D) ruling that the Browns' claims against Pacific and GE are arbitrable.

---

*Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir.1990)); *see also* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3914.17 (2d ed. 1992) (noting that the appellate review provisions "fit well with the general purpose to prefer arbitration to litigation"). It appears inconsistent with the policy favoring expeditious arbitration to permit immediate appeals of arbitration orders where the underlying litigation is filed in state court and is not removable.

> [T]he pro-arbitration aims of the statute's advocates have been achieved in the "embedded" [where the litigation and arbitration proceedings are in the federal court together] proceeding. They have not been, however, in the independent proceeding [where the arbitration proceeding is separate from the underlying litigation]. There, a decision in favor of arbitration can be appealed forthwith, tying the parties down in continued litigation of the issue and swelling the cost--in time, effort, and money--of resolving the dispute, which is wholly at war with the purpose of arbitration and wholly inconsistent with what the sponsors of § 16 wanted to accomplish.

David D. Siegel, Practice Commentary, 9 U.S.C.A. § 16, at 494 (West Supp. 1999). Despite these concerns, the courts have viewed the question of reviewability as purely an issue of statutory language and have refused to read congressional intent to overcome this apparent inconsistency. *See Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) ("The fact that a separate but related state-court action remains pending does not alter the fact that '[t]he decision to compel arbitration settled everything that was before the district court in this case.' " (citing *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1302 (9th Cir. 1994))); *Stedor Enter., Ltd. v. Armtex, Inc*., 947 F.2d 727, 732 (4th Cir. 1991) ("We recognize that the result we reach here has been roundly criticized on grounds of public policy."). We do not decide differently here.

A

The Browns assert that the district court erred in denying their motion to dismiss the Federal Actions because Holt is an indispensable party whose joinder would destroy diversity jurisdiction.[6] We review the denial of a motion to dismiss for failure to join an indispensable party for an abuse of discretion. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438-39 (5th Cir. 2003).

Under Rule 19, a person subject to process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a). If a person who qualifies under Rule 19(a) cannot be made a party because, for example, joinder would destroy subject-matter jurisdiction, a federal court must determine whether that person is "indispensable." In making this determination, the court should consider:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b). When assessing these factors, the relevant inquiry is whether "in equity and good conscience the action shall proceed among the parties before it, or should be dismissed, the

---

[6]Without diversity jurisdiction, Appellees lack an independent basis for the district court's jurisdiction over the  Federal Actions as the FAA does not confer federal question jurisdiction.

-10-

absent person being thus regarded as indispensable." *Id.*; *see Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (noting that the Rule 19 inquiry is "highly practical" and "fact-based").

The district court did not abuse its discretion in finding that Holt is not an indispensable party under Rule 19(b). The threat of piecemeal, inconsistent litigation of claims and issues, the Browns' primary concern, is insufficiently prejudicial to render a party indispensable under Rule 19 given the oft-stated preference for arbitration under the FAA. *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994); *see Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 446 (2d Cir. 1995) (noting that any prejudice from piecemeal litigation is overcome by the "strong bias in favor of arbitration"). Furthermore, the Browns' "fear that the federal and state courts will reach conflicting interpretations of the arbitration clauses [themselves] does not present the degree of prejudice necessary to support a conclusion that [Holt] is an indispensable party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203 (6th Cir. 2001); *see Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 453 & n.3 (7th Cir. 1977) (refusing to find an absent party indispensable where "the only danger is inconsistent judgments on the arbitration issue"). Given the slight risk of prejudice, consideration of the extent to which any prejudice can be reduced or eliminated, Rule 19(b)'s second factor, is largely unnecessary. *See Cohen*, 276 F.3d at 205. As to the third factor under Rule 19(b), requiring arbitration of these claims in accordance with the arbitration agreement, while allowing a state court to pronounce upon the issue of arbitrability, does not render the potential judgment inadequate. *Id*. Finally, although the state court may be able to provide an adequate alternative remedy, such availability is insufficient reason for deciding that an FAA action should not proceed. *Bio-Analytical Servs., Inc.*, 565 F.2d at 453.

B

-11-

The Browns argue that the district court should have abstained from exercising jurisdiction over the Federal Actions. They assert that the district court misapplied the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "We apply a two-tiered standard of review in abstention cases. Although we review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002).

Under the *Colorado River* doctrine, a court may abstain from a case under "exceptional circumstances." *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002).[7] There are six factors for determining whether "exceptional circumstances" exist: (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Stewart*, 438 F.3d at 491; *see Colo. River*, 424

_____

[7] This doctrine only applies when there are parallel proceedings pending in federal and state court. *Republic Bank Dallas, Nat'l Assoc. v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). Suits are "parallel" if they "involv[e] the same parties and the same issues." *Id.* at 1121 (quoting *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir.1973)). The Federal Actions are not precisely parallel to the State Action. Although Holt is a party to the State Action, he is not party to the Federal Actions. The issues are also arguably different. The Browns filed the State Action seeking a judicial remedy for alleged tortious actions by the Appellees and Holt. The Appellees filed the Federal Actions to compel arbitration. Although it is well-established that the *Colorado River* abstention doctrine cannot be invoked to avoid federal jurisdiction where suits are not parallel, *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 540 (5th Cir. 2002), we have recognized that "it may be that there need not be applied in every instance a mincing insistence on precise identity" of parties and issues, *McIntosh*, 828 F.2d at 1121. Because we conclude that abstention is inappropriate, we need not resolve whether these proceedings are parallel for purposes of the *Colorado River* abstention doctrine. *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 493 (5th Cir. 2006).

U.S. at 818; *Moses H. Cone*, 460 U.S. at 23. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see Black See Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000) (similar).

The Browns' sole argument in favor of abstention is that the state court may decide that the case against Holt is not arbitrable after the district court decided that the claims against Smith Barney are arbitrable. They assert that the possibility of piecemeal litigation, the third factor in the abstention analysis, required the district court to abstain from the exercise of jurisdiction. We found a similar argument unconvincing in *Snap-On Tools*. In that case, the plaintiffs-appellants argued that abstention was appropriate where certain state defendants would not participate in the arbitration because they were neither parties to the federal actions nor the arbitration agreement. We expressed doubt that the state court would determine the issue of arbitrability differently from the federal court and also found that "some piecemeal litigation" is sometimes "the inevitable result of a congressional policy strongly favoring arbitration." *Snap-On Tools*, 18 F.3d at 1266.

The Browns attempt to distinguish this case from *Snap-On Tools*. They argue that abstention is warranted where the state court's arbitrability determination may affect a party to the arbitration agreement, not a non-party as in *Snap-On Tools*. They assert that "*Moses H. Cone* only condones piecemeal litigation where one of the parties to the underlying dispute is not a party the arbitration agreement" and that *Snap-On Tools* did not decide this issue differently.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River*, 424 U.S. at 813. It is now well-established that the FAA "declared a national policy in favor

of arbitration." *Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986). Congress's intent was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22. Allowing a federal court to order arbitration, even where a state court may construe an arbitration clause differently, is fully consistent with this established congressional intent. This conclusion is not altered simply because a state court's arbitrability decision may involve a party to the arbitration agreement. *See Cohen*, 276 F.3d at 207 (stating that the desire to avoid litigating a single issue, including arbitrability, in multiple fora "is insufficient to overcome the strong federal policy supporting arbitration"). Indeed, it would appear antithetical to the FAA's recognized purpose to require a district court to decline jurisdiction over a properly filed FAA action simply because a party to an arbitrable contract cannot be joined in the federal action. *See Safety Nat'l Casualty Corp. v. Bristol-Myers Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000) (noting that, under *Moses H. Cone*, the possibility of piecemeal litigation must give way to the overriding federal policy to give effect to arbitration agreements). The Browns provide no reasons in law or policy for favoring the distinction they propose, and we see no reason for carving out such a distinction in this case.

C

Even if the district court properly exercised jurisdiction, the Browns assert that the district court erred by compelling arbitration of their claims. They contend that their consent to arbitrate was vitiated by fraud and error and, furthermore, that the arbitration clause itself is a contract of adhesion.[8] We review the grant of a motion to compel arbitration *de novo*. *Webb v. Investacorp,*

---

[8] "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004). "[G]enerally applicable contract

*Inc.*, 89 F.3d 252, 257 (5th Cir. 1996); *Bailey*, 364 F.3d at 263.

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry." *Webb*, 89 F.3d at 257-58. The court must first determine whether the parties agreed to arbitrate the dispute. *Id*. at 258 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985)). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. The court then must determine if any legal constraints foreclose arbitration of those claims. *Mitsubishi Motors*, 473 U.S. at 628.

On appeal, the Browns challenge only the validity of their consent to arbitrate. "Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1208 (2006). The first challenges the validity of the arbitration agreement itself; the second challenges the contract as a whole. *Id*. A federal court decides challenges to the making of an agreement to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Conversely, "a challenge to the validity [of a contract] as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing,* 126 S.Ct. at 1210.

Although the Browns argue fraud and error, they do not distinguish between their attacks on the validity of the client agreements and the arbitration clauses themselves. They assert only that they

---

defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996).

would not have entered into the client agreements containing the arbitration clauses if Holt had not misrepresented the terms of their investments. Where claims of error, fraud, or unconscionability do not specifically address the arbitration agreement itself, they are properly addressed by the arbitrator, not a federal court. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 470 (5th Cir. 2002); *Rojas v. TK Commc'n, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996). Accordingly, we may not address whether fraud or error vitiates the Browns' contract.

We may, however, address the Browns' argument that the arbitration clauses themselves are contracts of adhesion and, therefore, unenforceable. The Browns rely primarily upon *Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 776 So.2d 589 (La. Ct. App. 2000), and *Simpson v. Grimes*, 849 So.2d 740 (La. Ct. App. 2004). The Louisiana Supreme Court has, however, recently abrogated *Sutton Steel* and *Simpson* in *Aguillard v. Auction Management Corp.*, 908 So.2d 1 (La. 2005). In *Aguillard*, the court attempted to "resolve a split among the circuits regarding the enforceability of arbitration agreements contained within consumer standard form contracts under a 'contract of adhesion' analysis . . . ." *Id*. at 3. It declared:

> In summation, a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error which vitiates consent. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.

*Id*. at 10-11. Applying these principles, the Louisiana Supreme Court found no evidence that the plaintiff did not consent. The plaintiff in *Aguillard* signed the document and, according to the court, "a party who signs a written instrument is presumed to know its contents." *Id*. at 17. The court also

found no evidence that inequality in the parties' respective bargaining positions vitiated consent "because the plaintiff could have avoided arbitration and the contractual provisions as a whole by simply not signing the agreement." *Id*. Finally, the court examined the arbitration agreement itself and found that the lower court, in following *Sutton Steel* and *Simpson*, "erred as a matter of law in declaring the arbitration clause adhesionary" because, *inter alia*, the print was not unreasonably small, the contract was only two pages, and the contract was mutually burdensome. *Id*. at 16-18.

The arbitration clauses in the Browns' client agreements are not unconscionable and the district court did not err in finding them valid. As in *Aguillard*, the Browns were not forced to agree to the terms of those clauses. They could have avoided arbitration by not engaging Smith Barney's services. There is nothing exceptional or burdensome about these clauses, and there is no reason to believe that the Browns did not knowingly and willingly accept their terms.

D

Provided the agreements are valid, the Browns do not dispute the arbitrability of their claims against Smith Barney. They argue, however, that the district court erred by estopping the Browns from asserting that the lack of a written arbitration agreement precluded arbitration of their claims against GE and Pacific. We review for abuse of discretion the district court's use of equitable estoppel. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000).

Although arbitration is a matter of contract that generally binds only signatories, a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration. *Id*. at 526 (citing *MS Dealer Serv. Corp. v. Franklin*, 177

F.3d 942, 947 (11th Cir. 1999)).[9]  In *Grigson*, we held that a non-signatory to an arbitration agreement can compel arbitration: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.  *Id*. at 527.  We reasoned that equity does not allow a party to "seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."  *Id*. at 528; *see Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (stating that a plaintiff should not be able to claim the benefit of a contract and simultaneously avoid its burdens).  "[T]he result in *Grigson* and similar cases makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003).

Although close, we conclude that the district court did not abuse its discretion in determining that the Browns were estopped under *Grigson*'s second prong from asserting that a lack of a written arbitration agreement precluded arbitration.  The district court's finding that there was no way to bring actions against GE and Pacific without considering the actions of Smith Barney and Patrick

---

[9]  This circuit does not stand alone in approving the use of equitable estoppel against a non-party to an arbitration agreement.  *See, e.g., Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-58 (11th Cir. 1993); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (7th Cir. 1984).

Holt, is not patently incorrect.[10]  Whether and how GE and Pacific defrauded or breached duties owed to the Browns depends, in some part, upon the nature of tortious acts allegedly committed by Holt and Smith Barney—acts that would be covered by the arbitration agreement—as well as any tortious acts by GE and Pacific.  *See Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002) (finding no abuse of discretion where a plaintiff alleges "interdependent and concerted misconduct," while denying that its claims are intertwined with an agreement containing an arbitration clause).  As the Browns fail to allege tortious acts by GE and Pacific that are separate and apart from Holt's, we can only conclude that the complaint asserts concerted misconduct by all parties.  "To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous."  *Grigson*, 210 F.3d at 528. "By this measure the district court did not abuse its discretion."  *Hill*, 282 F.3d at 349.

IV

For the reasons stated, we AFFIRM the district court's order staying proceedings and compelling arbitration of the Browns' disputes against Smith Barney, Pacific, and GE.

---

[10]  The Browns' claims against Pacific and GE sound in fraud, negligence, and breach of various common law and statutory duties.  They allege that, through Holt as their agent, those entities: (1) misrepresented facts and insurance policy provisions to obtain an unjust advantage; (2) failed to disclose that the Browns were purchasing a variable annuity; and (3) misrepresented that the investment plan met the needs of Lonnie and Netty Brown.  They also allege that GE and Pacific negligently conferred powers of agency and failed to properly train and supervise Holt.