**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 12, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-30474
Summary Calendar

)))))))))))))))))))))))))))

TRANSOCEAN OFFSHORE USA, INC.

            Plaintiff-Appellant

    v.

DAVID CATRETTE

            Defendant-Appellee

---

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:05-CV-6328

---

Before DEMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

    This is an appeal from a district court's order staying this litigation in favor of similar state court litigation. Because the district court abused its discretion in staying this case, we REVERSE the district court's order and REMAND the case for further proceedings consistent with this opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Defendant-Appellee David Catrette ("Catrette") was employed as a mechanic by Plaintiff-Appellant Transocean Offshore USA, Inc. ("Transocean"), for approximately ten years. On April 9, 2003, Catrette reported to a Transocean medic that he was experiencing discomfort in his right shoulder as a result of an accident on the M/V DISCOVERER SPIRIT.[1] After an examination, the medic gave Catrette an anti-inflammatory and released him to resume work.

Catrette made no further complaints about his shoulder until February 12, 2004, when he advised Transocean that he had sustained a rotator cuff injury as a result of his accident in 2003. Catrette requested further treatment as well as compensation for his expenses arising out of the injury. Transocean's claims handler, Shuman Consulting Services, L.P., ("Shuman Consulting") arranged for Catrette to see Dr. Jay Binder, an orthopedic specialist. Dr. Binder concluded that Catrette did not have a torn rotator cuff, but did recommend a course of physical therapy. Catrette claims that Dr. Binder informed Shuman Consulting of his diagnosis and recommendation, but that no one ever told Catrette of the results.

Transocean and Catrette then entered into a settlement agreement (the "Release"). In exchange for $4000, Catrette

---

[1] The date of the alleged accident is disputed, but the court need not resolve that issue in order to reach its decision in this case.

2

agreed to release and indemnify Transocean from any and all claims Catrette might have arising out of the alleged accident. The agreement was memorialized before a court reporter in a transcript of the settlement proceedings. Catrette did not have his own attorney during these proceedings.

Catrette later claimed that he was subsequently diagnosed with a rotator cuff tear. Therefore, on June 27, 2005, Catrette commenced litigation under the Jones Act against Transocean in the United States District Court for the Eastern District of Louisiana. Catrette voluntarily dismissed his complaint three days later and refiled his suit in a Louisiana state court on July 14, 2005. Catrette filed a motion for partial summary judgment in state court, asking the state court to invalidate the Release as a result of lack of consent and inadequate consideration, based on the fact that Catrette was not aware of Dr. Binder's conclusions when he agreed to the Release. The state court denied Catrette's motion, finding there were genuine issues of material fact regarding the validity of the Release.

Transocean filed the instant lawsuit on December 2, 2005, seeking damages from Catrette as a result of Catrette's breach of the Release. Transocean filed a motion for partial summary judgment, to which Catrette responded by filing a motion to dismiss and, alternatively, a motion to stay the suit in favor of his state court lawsuit. The district court granted the stay, and Transocean now appeals.

3

## II. JURISDICTION AND STANDARD OF REVIEW

Transocean premises federal subject matter jurisdiction on diversity of citizenship, see 28 U.S.C. § 1332, and admiralty jurisdiction, see 28 U.S.C. § 1333, and made an admiralty designation under Rule 9(h) of the Federal Rules of Civil Procedure. We have jurisdiction over the district court's order granting the stay under 28 U.S.C. § 1291. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8-13 (1983); see also Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc., 408 F.3d 248, 250 (5th Cir. 2005). We review a district court's decision to stay a federal suit pending the outcome of state court litigation for an abuse of discretion; however, we consider any legal interpretations underpinning the decision de novo. Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 649-50 (5th Cir. 2000); see also Stewart v. W. Heritage Ins. Co., 438 F.3d 488, 491 (5th Cir. 2006).

## III. DISCUSSION

It is well established that federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given to them. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). As a result, the pendency of an action in state court is typically no bar to proceedings concerning the same matter in federal court. Id. There are, however, several exceptions to this general rule.

4

One such exception is found in <u>Brillhart v. Excess Insurance Co. of America</u>, 316 U.S. 491 (1942), which is applicable when the federal suit seeks only declaratory relief.  Under <u>Brillhart</u>, a federal court may stay a declaratory judgment suit in favor of state court litigation if, after consideration of several factors, the court determines that the suit would be better handled by the state court.  <u>Sherwin-Williams Co. v. Holmes County</u>, 343 F.3d 383, 389 (5th Cir. 2003) (listing six factors a court should consider).  However, when the federal suit seeks monetary or other relief, even if declaratory relief is also requested, the standard found in <u>Colorado River</u> is used to determine whether a stay of the federal proceedings is warranted. <u>Am. Guar.</u>, 408 F.3d at 250-51.  Under <u>Colorado River</u>, the district court's discretion to stay is "narrowly circumscribed" and requires the existence of "exceptional circumstances" before a stay is permissible.  <u>See</u> <u>id.</u>; <u>Southwind Aviation, Inc. v. Bergen Aviation, Inc.</u>, 23 F.3d 948, 951 (5th Cir. 1994) (per curiam).

Here, Transocean's federal suit seeks monetary relief by way of a breach of contract claim.  The district court did not apply either <u>Brillhart</u> or <u>Colorado River</u> in its analysis, but did characterize Transocean's federal suit as "virtually tantamount to a declaratory judgment action . . . ."  (4/19/06 Order & Reasons at 10.)  There was no finding, however, that Transocean's breach of contract claim was frivolous or that it was included

5

solely to prevent application of the more lenient Brillhart standard. See Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 497 n.4 (5th Cir. 2002) (applying Colorado River when claims for coercive relief were not frivolous and there was no evidence they were added solely to avoid Brillhart). Thus, under this court's precedent, stay of the federal proceedings must be analyzed under Colorado River. See Southwind Aviation, 23 F.3d at 951 (holding that, because suit requested damages for breach of contract, Colorado River applied, even though district court characterized suit as declaratory judgment action).

A. *Colorado River* Analysis

We turn now to whether this case meets the exceptional circumstances test outlined in Colorado River. As an initial matter, a stay under Colorado River is permissible only when the federal and state cases are "parallel." Am. Guar., 408 F.3d at 251; Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 540 (5th Cir. 2002). This means that the suits must involve the same parties and the same issues. Am. Guar., 408 F.3d at 251; Diamond Offshore, 302 F.3d at 540.

If the federal and state cases are parallel, the court then engages in a multi-factored analysis to determine whether there are exceptional circumstances warranting a stay of the federal litigation. Stewart, 438 F.3d at 491. The relevant factors identified by the Supreme Court are: (1) the assumption by either

court over a res; (2) the relative inconvenience of the forums; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings to protect the rights of the party invoking federal jurisdiction.  Id.; see also Colo. River, 424 U.S. at 818.  We do not apply these factors mechanically, but carefully balance them "'with the balance heavily weighted in favor of the exercise of jurisdiction.'"  Brown v. Pac. Life Ins. Co., 462 F.3d 384, 395 (5th Cir. 2006) (quoting Moses H. Cone, 460 U.S. at 16).

We first note that it is questionable whether the federal and state proceedings in this case are in fact parallel.  While the parties are the same in each case, the claims and issues are not.  Catrette's state court suit includes a claim of negligence against Transocean that is not present in the federal suit, and Transocean's federal suit contains a claim for breach of contract that the state court suit does not.  The Colorado River doctrine cannot be invoked if the suits are not parallel; however, this court has not always required a precise identity of parties and issues.  Brown, 462 F.3d at 395 n.7.  In this case, because we ultimately conclude that abstention is not proper, we need not determine whether these proceedings are truly parallel.  See id.

Turning next to the consideration of the factors used in the Colorado River analysis, we observe that the first two factors--

7

assumption by the court over a res and relative inconvenience of the forums--do not weigh in favor of abstention. Neither court has assumed jurisdiction over a res, and the cases are both in Louisiana and convenient for the parties.

The third factor, avoidance of piecemeal litigation, weighs only slightly in favor of abstention. As explained by this court in Stewart v. Western Heritage Insurance Co., the Colorado River doctrine does not prohibit duplicative litigation, but only piecemeal litigation. 438 F.3d at 492. The assertion of res judicata following a decision by either the federal or state court in this case would eliminate any problem of inconsistent judgments. See id. As the litigation stands, though, with the negligence claim in state court and the breach of contract claim in federal court, this factor does militate toward abstention.

The order in which jurisdiction was obtained does not weigh heavily in favor of abstention. Although Catrette's state court suit was first filed, Transocean could not have filed first, as it was Catrette's filing of the state court suit that created Transocean's breach of contract claim. As to the final two factors, general maritime law provides the rules of decision in both cases, and the state court is capable of protecting Transocean's rights. Both of these factors are neutral and do not persuade this court that exceptional circumstances exist.

In sum, the avoidance of piecemeal litigation is the only factor in the Colorado River analysis that leans toward

8

permitting a stay of the federal litigation in this case. This one factor, however, is insufficient to create the exceptional circumstances necessary to warrant a stay of the federal proceedings. See Stewart, 438 F.3d at 493 (finding district court abused its discretion in staying federal litigation when avoidance of piecemeal litigation was only factor weighing in favor of abstention). Accordingly, granting a stay under the Colorado River doctrine would be an abuse of discretion in this case.

B.   The District Court's Analysis

As noted above, the district court did not rely on either Brillhart or Colorado River in making its decision to stay the case. Instead, the district court determined that a stay was appropriate because (1) Catrette has a right to a jury trial in state court on his Jones Act claim, but would not have a right to a jury trial in federal court; and (2) proceeding with the federal action would amount to a "constructive removal" of Catrette's Jones Act claim, which is not removable as a matter of law.

We make no comment on whether the district court's analysis of Catrette's right to a jury trial in federal court is correct. We do, however, note that neither the Supreme Court nor this court has ever held that a stay is appropriate solely because a jury trial is available in one forum, but not another. Indeed, the availability of a jury trial is not one of the factors the

9

Supreme Court has authorized lower courts to consider in determining whether a stay is warranted under <u>Brillhart</u> or <u>Colorado River</u>.

As for the district court's concern about a constructive removal, this court has found no Supreme Court or court of appeals opinion that even recognizes constructive removal. The closest Catrette has come to case law on constructive removal is <u>Great Lakes Dredge & Dock Co. v. Ebanks</u>, 870 F. Supp. 1112 (S.D. Ga. 1994). In that case, the district court granted a motion to dismiss a declaratory judgment claim in federal court when the injured seaman had filed a Jones Act claim in state court. <u>Id.</u> at 1119. The court noted that the declaratory judgment claim amounted to a "backdoor" removal. <u>Id.</u> at 1118. This statement, however, came in a discussion of the <u>Brillhart</u> factors, since the court specifically refused to apply the strict standard found in <u>Colorado River</u>, and, thus, this case is distinguishable from the case at hand. <u>Id.</u> Further, because the federal suit in <u>Great Lakes</u> was only a declaratory judgment, it resembled a "constructive removal" much more closely than does this case, where damages for a breach of contract are also sought.

The district court cites numerous cases for the proposition that it is permissible to stay or dismiss a federal declaratory judgment action in favor of a state court Jones Act claim. <u>See</u>, <u>e.g.</u>, <u>Torch, Inc. v. Leblanc</u>, 947 F.2d 193 (5th Cir. 1991); <u>Rowan Cos. v. Griffin</u>, 876 F.2d 26 (5th Cir. 1989); <u>Taira Lynn Marine,</u>

10

Inc. v. Blanchard, No. 00-CV-2161, 2000 WL 1520959 (E.D. La. Oct. 12, 2000); Belle Pass Towing Corp v. Cheramie, 763 F. Supp. 1348 (E.D. La. 1991). None of these cases, however, applied the Colorado River exceptional circumstances standard, because all of the cases dealt only with federal declaratory judgments. Our precedent demands that we apply Colorado River in this case because Transocean has sought monetary damages for breach of contract. Therefore, those cases, which were analyzed under a more lenient standard, do not persuade this court that a stay is appropriate under Colorado River.

Consequently, the district court abused its discretion when it did not apply Colorado River to its analysis of Catrette's motion to stay and, instead, stayed the case on grounds not recognized by this court or the Supreme Court. As a result, we reverse the district court's order staying this litigation and remand for further proceedings.

## IV. CONCLUSION

For the reasons above, we REVERSE the district court's order staying this litigation and REMAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.