# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40458

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2014

Lyle W. Cayce
Clerk

CHESAPEAKE LOUISIANA, L.P.,

Plaintiff - Appellee

v.

BUFFCO PRODUCTION, INC.; TWIN RESOURCES, LLC; WAYNE E. FREEMAN; FREEMAN CAPITAL, LTD.; FREEMAN RESOURCES, LTD.; FRM GP, LLC,

Defendants - Appellants

FRANK M. BUFKIN III,

Intervenor Defendant - Appellant

v.

HARLETON OIL & GAS, INCORPORATED,

Intervenor - Appellant - Appellee

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 2:10-CV-359

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40458

Asserting diversity jurisdiction, Chesapeake Louisiana, L.P. ("Chesapeake") brought several state-law claims against (1) Freeman Capital, Ltd. ("Freeman Capital"); (2) Buffco Production, Inc. and Twin Resources, LLC (collectively, "Buffco"); and (3) Wayne E. Freeman, Freeman Resources, Ltd., and FRM GP, LLC (collectively, "Freeman") seeking to recover its alleged overpayment for an assignment of the deep rights in the Geisler Unit property. Buffco, Freeman, and Freeman Capital counterclaimed, alleging that Chesapeake was required to purchase their interests in various properties referred to as the Bowen, Hemby, and Yow Units. Harleton Oil & Gas, Inc. ("Harleton"), the holder of 50% of the deep rights in the Geisler Unit, intervened and asserted various claims against Chesapeake, Freeman, and Buffco.

The district court granted summary judgment in favor of Chesapeake and Harleton with respect to the Geisler Unit claims and in favor of Chesapeake with respect to the claims concerning the Bowen, Hemby, and Yow Units. However, because Harleton's proper alignment as a plaintiff-intervenor destroys subject-matter jurisdiction, we VACATE the district court's summary judgment decision with respect to the Geisler Unit claims and REMAND the matter for a determination of whether Harleton is an indispensable party. We AFFIRM the court's decision with respect to the Bowen, Hemby, and Yow Units, as to which an independent ground for jurisdiction exists.

## I. Factual and Procedural Background

Chesapeake sued Freeman and Buffco,[1] essentially seeking to recover an overpayment it had made to them. This alleged overpayment involved a transaction that arose out of a July 31, 2008 Letter Agreement (the "Letter

---

[1] Chesapeake also sued Freeman Capital but subsequently abandoned its claim after discovering that Freeman Capital had not received any portion of the $13.6 million that Chesapeake had paid for the Geisler Unit.

2

No. 13-40458

Agreement") entered into between Chesapeake and Buffco. The Letter Agreement provided that Chesapeake would pay approximately $232 million to acquire an assignment of Buffco's working interests in the deep rights of several oil and gas properties in Texas for a period of three years. These properties included, among others, the Geisler Unit and the Bowen, Hemby, and Yow Units. The Letter Agreement contained a "Non-Ops Clause" through which Chesapeake agreed to make the same offer (with the same terms) to the owners of the non-operating working interests of these properties. The non-operating working interest owners included Freeman, Freeman Capital, and Harleton.

Based on faulty information from a third party to the effect that Buffco and Freeman each owned 50% interests in the Geisler Unit, Chesapeake paid Buffco and Freeman $6.8 million in exchange for what Chesapeake believed was 100% of the deep rights below the Geisler Unit. The parties now agree that the proper allocation of the working interests in the Geisler Unit was actually: Buffco with 25%, Freeman with 22%, Freeman Capital with 3%, and Harleton with 50%. As a result, Chesapeake only received a 47% interest in the deep rights of the Geisler Unit. Chesapeake and Buffco agreed not to go forward with the transaction involving the Bowen, Hemby, and Yow Units, which was scheduled for a later closing date.

After Chesapeake sued to recover its overpayment, Freeman, Freeman Capital, and Buffco counterclaimed, alleging that Chesapeake breached the Letter Agreement by failing to purchase the Bowen, Hemby, and Yow Units. Freeman Capital also claimed that Chesapeake breached the Letter Agreement by failing to purchase its 3% interest in the Geisler Unit.

Harleton intervened pursuant to Federal Rule of Civil Procedure 24(a)(2). Boiled down to its essentials, Harleton sought 50% of the $13.6 million Chesapeake paid to Buffco and Freeman, and in exchange Harleton

would convey its interest in the Geisler Unit to Chesapeake. Harleton also asserted various fraud claims against Buffco based on Buffco's alleged misrepresentations to Chesapeake concerning its interests in the Geisler Unit and to Harleton concerning its offer to purchase Harleton's interests in the Geisler Unit. No party asserted a claim or counterclaim against Harleton.

Chesapeake and Buffco settled, and the district court dismissed all the claims between them. The district court then entered summary judgment based on the parties' various motions, ruling that: (1) Freeman, Freeman Capital, and Harleton were third-party beneficiaries of the Letter Agreement such that they could enforce the "Non-Ops Clause"; (2) Buffco and Freeman were unjustly enriched by the portion of the $13.6 million payment from Chesapeake that is attributable to the 53% of the Geisler Unit owned by Harleton and Freeman Capital and that a constructive trust should be imposed on that portion of the funds; (3) Harleton and Freeman Capital should convey their interests in the Geisler Unit to Chesapeake after receiving the funds from Buffco and Freeman; (4) Chesapeake was not entitled to any repayment of the $13.6 million; (5) Freeman and Freeman Capital's claims against Chesapeake concerning the Bowen, Hemby, and Yow Units failed as a matter of law; (6) Harleton's fraud claims against Buffco survive;[2] and (7) Harleton and Freeman Capital are entitled to recover pre-judgment interest against Buffco and Freeman.

Following the district court's summary judgment ruling, Freeman and Freeman Capital filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, asserting that Harleton's intervention destroyed diversity because it is properly aligned as a plaintiff and its status as an indispensable

---

[2] In entering final judgment, the district court severed Harleton's fraud claims and made them the subject of a separate action.

No. 13-40458

party required the court to dismiss the action. The motion asserted that the district court lacked jurisdiction over the claims related to the Geisler Unit and the Bowen, Hemby, and Yow Units.

The district court denied the motion, aligning Harleton as a defendant-intervenor. As a result, the court concluded, federal jurisdiction existed under 28 U.S.C. § 1332 and, therefore, an analysis of whether supplemental jurisdiction arose under 28 U.S.C. § 1367 was unnecessary. Freeman, Freeman Capital, Buffco, and Harleton[3] timely appealed.

## II. Geisler Unit Claims

As a court of limited jurisdiction, we must first satisfy ourselves, independent of the district court's determination, that subject-matter jurisdiction exists over the parties' claims related to the Geisler Unit. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Silver Star Enters., Inc. v. M/V Saramacca*, 19 F.3d 1008, 1013 n.6 (5th Cir. 1994). As proponents of jurisdiction, Chesapeake and Harleton carry the burden of establishing jurisdiction. *See Kokkonen*, 511 U.S. at 377. Here, only two potential sources of jurisdiction exist: § 1332 (diversity) and § 1367 (supplemental). As the parties correctly acknowledge, diversity jurisdiction existed over the suit prior to Harleton's intervention;[4] however, we must consider whether Harleton's intervention destroyed diversity such that the district court lacked jurisdiction over this matter.

We begin by determining whether Harleton is properly aligned as a defendant-intervenor (as the district court concluded) or a plaintiff-intervenor. Our generally accepted test for alignment places the parties with the same

---

[3] Harleton also asserted an alternative claim that we do not reach due to our jurisdictional ruling.

[4] Specifically, Chesapeake was a citizen of Oklahoma and Freeman, Freeman Capital, and Buffco were citizens of Texas and the amount in controversy exceeded $75,000.

"ultimate interests" in the litigation on the same side. *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010). To that end, we must "look beyond the pleadings, and arrange the parties according to their sides in the dispute" to ensure that the parties have a "collision of interest[s]" over the "principal purpose of the suit" and the "primary and controlling matter in dispute." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941) (citation and internal quotation marks omitted); *see also Griffin*, 621 F.3d at 388.

Here, the principal purpose of the suit and the primary and controlling matter in dispute suggest that Harleton is a plaintiff. The district court concluded that Harleton was a defendant after noting that "Harleton and Chesapeake could not be classified as sharing the same interest in the suit because both are openly competing to capture the same pot of money." However, the conclusion that Chesapeake and Harleton were adverse in seeking to recover the "same pot of money" belies the fact that both parties only wanted to recover money from Buffco and Freeman to ensure that Harleton received payment and Chesapeake received Harleton's interest in the Geisler Unit. Whether this was done directly by Buffco and Freeman paying Harleton who would then convey its interest to Chesapeake or by refunding part of Chesapeake's payment such that Chesapeake could then purchase Harleton's interest in practicality did not matter to Chesapeake and Harleton.

Harleton's proper alignment as a plaintiff-intervenor is further illustrated by the fact that the summary judgment order awarded relief to both Harleton and Chesapeake, and both Harleton and Chesapeake are essentially aligned on appeal in seeking affirmance of the order.[5] Further, Harleton

---

[5] Indeed, the district court's award of summary judgment relief against Freeman and Buffco in favor of Harleton renders unavailing Harleton's argument that it should be aligned as a defendant because its claims against Freeman and Buffco are merely "collateral to the principal dispute—the enforceability of the contract." Harleton's claims against Freeman and Buffco cannot be merely collateral for purposes of determining jurisdiction when they

affirmatively seeks to be aligned with Chesapeake in certain circumstances, such as when it argues that its unjust enrichment claim is timely because its claim can relate back to the timely unjust enrichment claim filed by Chesapeake. Finally, while Harleton brought a claim against Chesapeake,[6] Buffco, and Freeman, no party has brought a claim against Harleton, and Harleton has no potential for liability. Such a lack of potential for liability against a party suggests that the party should be aligned as a plaintiff. *See* 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 106.46 (3d ed. 2013) ("The intervenor must be potentially liable to the plaintiff on the primary claim in order to be treated as a defendant to whom supplemental jurisdiction may apply under Section 1367(b). An intervening plaintiff within the subsection is a party who voluntarily chooses to intervene in an ongoing federal action to assert its own affirmative claims."). Indeed, Harleton intervened to seek affirmative relief, not to protect its interests as a defendant. Therefore, based on the nature of Harleton's claim, it is proper to align it with Chesapeake as a plaintiff-intervenor.

Having determined that Harleton should have been aligned as a plaintiff-intervenor, we are bound to conclude that the district court lacked

---

are the principal source of relief for Harleton under the summary judgment order. *See Indianapolis*, 314 U.S. at 69 (observing that in aligning the parties, courts must look to the "realities of the record" and "look beyond the pleadings and arrange the parties according to their sides in the dispute").

[6] The fact that Harleton filed a claim against Chesapeake does not mean that the parties' interests were not overall aligned vis-à-vis Freeman and Buffco. For instance, in *Griffin*, an attorney seeking to recover fees for his representation of a beneficiary through a lien on the beneficiary's trust was properly aligned with the beneficiary as a plaintiff-intervenor as both parties sought recovery from the trust. *See Griffin*, 621 F.3d at 383, 388. This alignment was appropriate despite the fact that the attorney also sought relief from the beneficiary. *See id.*; *see also Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 159-60 (3d Cir. 1995) (although the interests of the original plaintiff and intervenor were "nominally" in conflict, the intervenor was still best aligned as a plaintiff when the "actual adversity of interest" pitted the intervenor against the original defendants).

diversity jurisdiction over the Geisler Unit claims. First, original jurisdiction under § 1332 was destroyed because the parties were no longer diverse—specifically, Harleton (plaintiff) and Buffco and Freeman (defendants) are all citizens of Texas. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."). Second, § 1367(a)'s supplemental subject-matter jurisdiction provision does not afford jurisdiction over the Geisler Unit claims because Harleton's participation as a plaintiff-intervenor would be inconsistent with the requirements of § 1332. *See* § 1367(b); *see also Griffin*, 621 F.3d at 386–87 ("[W]hile Congress codified the concepts of pendent and ancillary jurisdiction in § 1367(a), it apparently chose to circumscribe such jurisdiction in § 1367(b) with respect to plaintiff intervenors.").

Therefore, because there was no subject-matter jurisdiction over the parties' Geisler Unit claims following Harleton's intervention, we must vacate the grant of summary judgment with respect to the Geisler Unit claims. We remand these claims to allow the district court to consider in the first instance whether Harleton is an indispensable party such that dismissal of the entire action concerning the Geisler Unit is required. *See Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 393–94 (5th Cir. 2006) ("If a person who qualifies under Rule 19(a) cannot be made a party because, for example, joinder would destroy subject-matter jurisdiction, a federal court must determine whether that person is 'indispensable.'").

### III. Bowen, Hemby, and Yow Units Claims

We turn next to the district court's denial of relief on Freeman and Freeman Capital's counterclaims with respect to the Bowen, Hemby, and Yow

Units.[7] Freeman and Freeman Capital acknowledge on appeal that they have waived any argument concerning the *merits* of the district court's decision, arguing instead that the Bowen, Hemby, and Yow Units are compulsory-counterclaims that must be dismissed because subject-matter jurisdiction is lacking with respect to the Geisler Unit claims.

When an independent basis for jurisdiction exists with respect to a counterclaim, a federal court may adjudicate the claim even if the original claim was dismissed for lack of subject-matter jurisdiction. *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 355 (5th Cir. 2004); *see also Kuehne & Nagel (AG & Co) v. Geosource, Inc.*, 874 F.2d 283, 291 (5th Cir. 1989);[8] 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1414, at 130 (3d ed. 2010) ("If the counterclaim does present an independent basis of federal jurisdiction, however, the court may adjudicate it as if it were an original claim despite the dismissal of plaintiff's claim.").

---

[7] Notably, Harleton did not assert any interest in or claim involving these units, nor has any party suggested that Harleton is an indispensable party with respect to these claims. Therefore, our analysis of Harleton's intervention has no effect on our consideration of Freeman and Freeman Capital's claims regarding the Bowen, Hemby, and Yow Units.

[8] Freeman and Freeman Capital urge that we not rely on *Kuehne*, arguing that it conflicts with our earlier-decided opinion in *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194 (5th Cir. 1965). However, *Kuehne* does not conflict with and indeed cites to *Standard-Triumph Motor*, among other cases, for the proposition that a counterclaim need not be dismissed when supported by an independent ground for jurisdiction. *See Kuehne*, 874 F.2d at 291. Even if they did conflict with respect to whether a counterclaim can proceed when supported by an independent basis for jurisdiction, our rule of orderliness requires us to follow the earlier-decided case of *Haberman v. Equitable Life Assurance Society of the United States*, 224 F.2d 401 (5th Cir. 1955), where we held that a compulsory counterclaim could proceed to a final judgment on the merits, even if the court lacked jurisdiction over the primary claim, because diversity jurisdiction supported the counterclaim. *See* 224 F.2d at 409 ("[E]ven if the complaint be dismissed, a compulsory counterclaim is not required to be dismissed where it is supported by a proper ground of federal jurisdiction."); *see also United States v. Wheeler*, 322 F.3d 823, 828 n.1 (5th Cir. 2003) (explaining that when "two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent in the circuit" (citation and internal quotation marks omitted)).

No. 13-40458

Here, an independent basis for subject-matter jurisdiction based on § 1332 exists for the Bowen, Hemby, and Yow Units claims. The parties were completely diverse as Freeman and Freeman Capital were citizens of Texas and Chesapeake was a citizen of Oklahoma. Harleton did not destroy diversity with respect to these claims because its claims were limited to the Geisler Unit. Further, the amount in controversy with respect to these claims exceeded $75,000. Therefore, because Freeman and Freeman Capital's only challenge on appeal rests on their jurisdictional argument, we affirm the district court's decision concerning the Bowen, Hemby, and Yow Units.

## IV. Conclusion

We VACATE and REMAND the district court's summary judgment decision with respect to the Geisler Unit claims and AFFIRM the court's decision with respect to the Bowen, Hemby, and Yow Units claims.

10